J-A16008-20

2020 PA Super 216

A.L.B.

v.

M.D.L.

     Appellant

:    IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:    No. 1847 MDA 2019

Appeal from the Order Entered October 4, 2019
In the Court of Common Pleas of Berks County Civil Division at No(s):
17-17469

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.

OPINION BY PANELLA, P.J.:               **FILED SEPTEMBER 04, 2020**

M.D.L. ("Father") appeals from the order of the Court of Common Pleas of Berks County awarding A.L.B. ("Mother") sole legal custody and primary physical custody of their children pursuant to Father's January 24, 2019 petition to modify custody. We affirm.

During their 20-year marriage, Father and Mother had four children, all boys: R.M.L., born in 2002, M.J.L., born in 2004, and twins D.M.L. and D.J.L., born in 2006. Father is a dentist with his own practice. Mother currently works as a nurse in the emergency department of a local hospital.

In June of 2017, Father discovered that Mother was having an affair with T.Z., a neighbor and a math teacher at the high school attended by R.M.L. and M.J.L. The parties filed for divorce, and a divorce decree was entered on January 9, 2018. Mother subsequently became engaged to T.Z. Their relationship has been a significant source of contention in this custody matter.

To that end, the trial court found that this relationship "was the catalyst for the parties['] divorce [and] Father's hostility and alienation of the children towards Mother," Trial Court Decision and Order, 10/3/19, at 2, and caused "hostility between Father and T.Z., as well as the children and T.Z." *Id*. at 3.

In September of 2017, the parties stipulated to a custody order whereby Mother and Father shared legal and physical custody of the four children, alternating physical custody on a week-by-week basis. Both parties filed petitions regarding custody in May of 2018. Father filed a petition to modify custody requesting, *inter alia*, that the trial court issue a no-contact order between the children and T.Z and that Father be awarded primary physical custody of R.M.L. Mother filed a petition for special relief, alleging, *inter alia*, that Father was alienating the children from her and requesting, *inter alia*, that Father be ordered to stop discussing her personal life and financial matters with the children.

By way of agreement of the parties, the court entered an order on June 5, 2018. The order directed that there be no contact between the children and T.Z. for six months and that Father stop discussing Mother's personal life, including T.Z., and financial matters with the children. Further, Mother and Father were to conduct all communications through the application Our Family Wizard. The order also appointed Dr. Stephen Lindenberg, Ph.D., to conduct a custody evaluation.

Dr. Lindenberg conducted the evaluation and submitted a 126-page report in December of 2018. In that report, Dr. Lindenberg discussed Parental Alienation Syndrome ("PAS") and parental alienation at length, and concluded that Father was alienating the children from Mother at a moderate level of severity. *See* Custody Evaluation, 12/13/18, at 5, 95-108, 116. This, in turn, had led R.M.L. to alienate his siblings from Mother. Dr. Lindenberg also noted that R.M.L. had been diagnosed with, and prescribed medication for, anxiety and depression. The report recommended shared legal and physical custody, and also recommended reunification therapy for Mother and the children and that R.M.L. resume individual therapy.

Father filed a petition to modify custody on January 24, 2019 in which he requested primary physical custody of all four of the children. In March of 2019, Mother filed a petition for special relief, contempt and emergency modification, alleging that Father continued to alienate the children from her and refused to comply with court orders. Mother asked that physical custody be transferred to her and that there be no contact between the children and Father. On May 1, 2019, the court issued an order denying Mother's petition, but only as it related to contempt. The order also directed that the parties participate in reunification therapy and that R.M.L. return to counseling, with Father ensuring that R.M.L. attend the sessions.

The trial court scheduled a full custody hearing for July 18 and July 22, 2019, and subsequently appointed Lauren Marks, Esquire to serve as *guardian*

*ad litem* ("GAL"). Marks conducted an evaluation and prepared a report. In her report, Marks found that Father was clearly alienating the children from Mother. The report also noted R.M.L.'s continuing issues with anxiety and depression and the toll the divorce was taking on him.[1]

Marks recommended that Mother have sole legal custody of the children. She also recommended that Mother have sole physical custody for 90 days, with Father having visitation only through supervised telephone calls or therapy sessions for those 90 days and then beginning to have incrementally increased periods of physical custody after that. Marks recommended that the no-contact order between T.Z. and the children be lifted and that Mother and the boys continue with intensive counseling.

The trial court also directed Dr. Lindenberg to produce an updated custody evaluation and report before the hearing, which Dr. Lindenberg did on July 15, 2019. In that updated report, Dr. Lindenberg noted Father's escalating alienation tactics, stating that "Father is alienating his children from

_____

[1] The report stated:

> [R.M.L.] is such a sad soul. He is intelligent and articulate. Every time I have a conversation with him, he spews Father's agenda. But there is always a moment of weakness when he confides how much he loves Mother. I get the sense he is terrified of the outcome of [the] trial. If the no-contact is lifted, Father will put more pressure on him with the promise of a car, college and expensive sports activities.

Report of the Guardian Ad Litem, undated, at 21.

[Mother] at a very high level of severity putting the children at risk for serious psychological harm." Custody Evaluation Update, 7/15/19, at 54. This report once again noted concerns regarding R.M.L.'s mental health and specifically that R.M.L. was at risk for self-harm. *See id*. at 56-57. This updated report recommended that Mother be awarded primary physical custody and sole legal custody regarding the boys' absences from school/activities for attendance at counseling appointments. It also recommended that R.M.L. undergo a comprehensive psychiatric assessment.

The trial court held a custody hearing on July 18, 2019, during which Dr. Lindenberg, Father and Marks testified. Following the close of the testimony for the day, the trial court entered an order awarding temporary sole physical and legal custody to Mother, and directing Father to have no contact with the children, until the hearing resumed on July 22, 2019. At the hearing on July 22, all four children testified in-camera. Mother also testified. However, the testimony was not complete by the end of the day on July 22, so a third day of testimony was scheduled for September 10, 2019.[2]

One day after the hearing concluded on September 10, the trial court entered an order lifting the no-contact order between T.Z. and the children. It then issued its custody decision and order on October 3, 2019, in which the

---

[2] Following the hearing on July 22, the trial court reverted the custody order back to the joint physical and legal custody order entered in September of 2017.

court conducted a full analysis of the factors statutorily required for it to consider when crafting a custody order. *See* 23 Pa.C.S.A. § 5328(a). During that analysis, the court agreed that Father had clearly been alienating the children from Mother. To that end, the court stated:

> Father, while claiming he would never inhibit contact between Mother and the children, does not allow R.M.L. to drive the car [Father bought for R.M.L.] to Mother's house even though the parties only live approximately one mile apart. Father insists that R.M.L. park the car in his driveway each evening and then he must either walk, bike, or have transportation from Father's house to Mother's. Father does not include Mother in medical decisions, such as R.M.L.'s oral surgery [to have his wisdom teeth removed], and retrieves the children from Mother's residence during Mother's periods of custody without notice or authorization. Additionally, when Mother arrives at one of the children's events, if Father is present, even if he is coaching one of the children's teams, he will leave. Father continuously, even after court order and admonition by this Court, speaks with the children about financial matters, including who is going to pay for their college education and Father uses his financial stronghold on the children and Mother to further alienate the children from Mother. Father has threatened Mother with pepper spray and doused her with a garden hose in front of R.M.L. when Mother came to talk to Father at his residence. Father also transferred R.M.L. to [a different high school] without Mother's consent or authorization.

Trial Court Decision and Order, 10/3/19, at 7.

The court continued:

> [T]his Court finds that a drastic change to the current custody schedule is necessary and warranted. Father has engaged in a systematic and patterned course of conduct to alienate the children from Mother. There is no question that Mother's hands are not clean in this matter and her extra-marital affair was the catalyst for the divorce and Father's resulting resentment is understandable. However, … Father is unable to set his resentment aside and move forward in a positive co-parenting relationship for the benefit of his children.

- 6 -

***Id***. at 12.

Accordingly, the court issued a final order directing that Mother have sole legal custody and primary physical custody of the boys, with Father having partial physical custody every other weekend. It also directed Mother and the four children to participate in intensive reunification therapy with Linda Gottleib and ordered Mother to secure a new individual counselor for all four of the children.

Father filed a motion to reconsider, which the trial court denied. Father then filed a timely notice of appeal. He also filed an emergency petition for supersedeas and request for stay of the trial court order pending appeal. This Court granted the petition in part, entering an order staying that part of the trial court's October 3, 2019 order requiring Mother and the four children to attend intensive reunification therapy with Gottleib pending the disposition of this appeal, which is now before us.

"Our standard of review over a custody order is for a gross abuse of discretion." ***Yates v. Yates***, 963 A.2d 535, 538 (Pa. Super. 2008) (citation omitted). Such an abuse of discretion will only be found if the "trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." ***Id***.

Further, in reviewing a custody order:

> We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making

independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Klos v. Klos*, 934 A.2d 724, 728 (Pa. Super. 2007) (citation omitted). As with any custody matter, the paramount concern is the best interests of the children involved. **See id**.

Here, Father first argues that the trial court erred by denying the oral motion for a continuance he requested on the first day of the hearing. Father argues that a continuance was warranted because Dr. Lindenberg did not submit his updated custody report until the week of trial and in that report, Dr. Lindenberg upgraded the degree of Father's alienation from moderate to severe and consequently changed his custody recommendation. According to Father, this left him without sufficient time to secure his own custody expert and evaluation to rebut Dr. Lindenberg's findings regarding parental alienation and his recommendation for custody. This claim fails.

The grant or denial of a motion for continuance is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court abused its discretion. **See J.S. v. R.S.S.**, -- A.3d --, 2020 WL 1861845 at *9 (Pa. Super. April 14, 2020); **In the Interest of D.F.**, 165 A.3d 960, 964-965 (Pa. Super. 2017). An abuse of discretion is not merely an error

of judgment. ***See In the Interest of D.F.***, 165 A.3d at 965. Rather, as our discussion regarding the review of custody orders makes clear, a trial court abuses its discretion only when it overrides or misapplies the law, or exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. ***See id***.

Here, in rejecting Father's claim that it erred in denying his motion for a continuance, the trial court stated:

> This Court denied the continuance that Father requested on the morning of trial, as Father had ample time to secure his own expert should he have so chosen. The Custody Evaluator, Dr. Lindenberg, had previously concluded that Father alienated the children from Mother to a "moderate" degree, and his amended and updated report simply noted that the alienation had progressed from moderate to severe. Ultimately, this Court gave weight to Dr. Lindenberg's opinion, as was supplemented by the recommendation of [the] [g]uardian ad [l]item, Lauren Marks, Esq.
>
> While their opinions were helpful and well-considered, this Court did not need any expert to clearly see that Father has engaged in a campaign of impactful and purposeful alienation of Mother.

Trial Court Memorandum Opinion, 11/12/19, at 2-3.

Father has simply not demonstrated that the trial court abused its discretion by denying a continuance in light of its conclusion that Father had ample time to secure his own expert regarding parental alienation. Once Dr. Lindenberg issued his initial report in December of 2018, Father was put on clear notice that it was Dr. Lindenberg's opinion that Father was alienating the children from Mother. ***See*** Custody Evaluation, 12/13/18, at 121 (stating that

"[Father] has vindictively alienated the children from [Mother] and relentlessly continues to do so").

Father now seems to assert that a continuance was warranted on the first morning of the hearing because Dr. Lindenberg improperly relied on PAS, which is not, according to Father, widely accepted in the scientific community. Father concedes, however, that the concept of PAS was introduced and discussed in the initial report Dr. Lindenberg submitted seven months prior to the hearing. **See** Father's Brief at 15 (stating that "initial evaluation gave due consideration and discussion to Parental Alienation Syndrome (PAS)"). Therefore, we fail to see how his current assertion challenging the general use of PAS lends any support to Father's contention that he needed a continuance on the morning of the hearing to give him time to secure his own expert. Father was well aware that Dr. Lindenberg would be relying on PAS from the time of his initial evaluation, and he certainly could have obtained his own expert regarding PAS and parental alienation at that time.[3]

Moreover, Dr. Lindenberg testified on the first day of the custody hearing, July 18, 2019. In his testimony, Dr. Lindenberg clearly found that Father was alienating Mother from the children, **see** N.T. Hearing, 7/18/19,

---

[3] We also note that it is questionable whether Father even properly preserved his claim related to the acceptability of PAS in the scientific community. He does not point to any place in the record where he raised this issue before the trial court, either during his oral motion for a continuance or elsewhere. **See** Pa.R.A.P. 302(a) (stating that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

at 18 (stating this is "one of the worst parental alienation cases that I have seen"), and recommended that Mother be awarded primary physical and sole legal custody of the children. After one more day of testimony, the hearing was continued until September 10, 2019, almost two months later. There is no evidence that Father tried to procure his own expert and a second custody evaluation during that almost two-month gap between his oral motion for a continuance and the September 10 hearing date. Based on all of these circumstances, Father has not established that the trial court abused its discretion by denying the motion for a continuance. No relief is due.

Next, Father contends the trial court erred in "relying heavily" on the recommendations of Marks, the appointed GAL. Father's Brief at 18. Father essentially contends that the trial court erred by giving weight to Marks's "unqualified opinions" that Father was alienating the children from Mother and that reunification therapy was warranted. *Id*. at 20, 21. Of course, issues of credibility and weight of the evidence, such as the one Father presents here, are exclusively for the trial court as the fact-finder in custody matters. This claim fails for this reason alone. *See Klos*, 934 A.2d at 728 (when reviewing custody orders, appellate courts must defer to the trial court on issues of credibility and weight of the evidence, as the trial court had the opportunity to view and assess the witnesses first-hand).

Father, however, carries his argument one step further and accuses the trial court of delegating its judicial powers to Marks by "merely substituting

the guardian's judgment for its own." Father's Brief at 22. Such substitution, Father maintains, created an "appearance of impropriety" which requires the granting of a new custody hearing. *Id*. This claim fails.

In support of his allegations, Father relies on *C.W. v. K.A.W.*, 774 A.2d 745 (Pa. Super. 2001). The circumstances in *C.W.*, however, were far different from those in the instant case. In *C.W.*, this Court found that the trial court had improperly delegated its judicial duties to the GAL where the trial court: declared that the GAL had "taught me my job"; repeatedly solicited the GAL's advice on how to rule on certain objections during the custody hearing; stated that it gave great weight to the GAL's recommendations; and then issued a custody order on the same date as the GAL submitted his recommendations which closely followed those recommendations. *See id*. at 749-750.

Here, unlike in *C.W.*, there is no evidence whatsoever that the trial court asked Marks for her advice on how she would rule on any evidentiary questions, nor does Father point to any place in the record where he believes this to have occurred. Moreover, unlike the trial court in *C.W.*, the trial court below described its reliance on the GAL report as follows:

> While this court considered the recommendation of [Marks], it was clear, independent of her report, that a drastic change in custody was necessary in order to begin to rebuild the years of damaging alienation perpetrated by Father. … [Marks'] recommendation was [but] one of many factors that were weighed in entering this Court's final October 3, 2019 order.

Trial Court Memorandum Opinion, 11/12/19, at 3.

Father has utterly failed to substantiate his claim that by considering Marks's recommendations, the trial court created any appearance of impropriety, much less one akin to that which arose in *C.W.* This claim merits no relief.[4]

Father also asserts that the trial court once again abdicated its duties by simply "copying" Mother's statement of facts "in lieu of applying the testimony/evidence at trial." Father's Brief at 23. He maintains that this use of "unproven" facts led the trial court to misapply the custody factors outlined in 23 Pa.C.S.A. § 5328(a). We do not agree.

When ascertaining the best interests of a child in a custody matter, the court must conduct a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of that child. *Klos*, 934 A.2d at 728. To that end, Section 5328(a) of the Pennsylvania Child Custody Act lists 16 factors a court is required to consider in order to determine the best interests of the child. *See* 23 Pa.C.S.A. § 5328(a).

---

[4] Father also suggests that the trial court erred by appointing a GAL in the first instance. As Mother points out, this issue is waived. In the first place, it is not fairly encompassed by the statement of questions presented for our review. *See* Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Moreover, Father does not point to any place in the record where he objected to the appointment of a GAL before doing so in his brief to this Court. *See* Pa. R.A.P. 302(a) (stating that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Here, the trial court addressed each one of these 16 factors in its custody decision and order, just as Section 5328(a) requires it to do. **See** Trial Court Decision and Order, 10/3/19, at 6-12. In discussing each factor, the trial court made a determination as to whether that factor weighed in favor of either party, and if it found that it did, it thoroughly explained its reasoning for reaching that conclusion. **See id**.

Father claims, however, that the trial court did not conduct its own independent consideration of the statutory custody factors. Rather, Father maintains that, in evaluating the factors, the court blindly relied on the facts that were presented in Mother's findings of fact but which were not, according to Father, supported by any testimony or other evidence in the record. Although Father maintains that "examples abound" of the trial court's wholesale reliance on Mother's rendition of the facts, he points to four specific instances where he complains this occurred.

First, Father asserts that the trial court improperly adopted Mother's finding of fact that Father transferred R.M.L. to a different high school without Mother's input when there is no support in the record for this finding. Contrary to Father's assertion, however, there is record support for this finding of fact. Mother was specifically asked on cross-examination if she was involved in the decision to transfer R.M.L. to the different school, and in response, Mother stated that she "was not involved in the decision." N.T. Hearing, 7/22/19, at 345. The trial court was, of course, free to credit Mother's testimony in this

regard. **See Commonwealth v. Page**, 59 A.3d 1118, 1130 (Pa. Super. 2013) (stating that issues of credibility lie within the province of the fact-finder). **See also** Custody Evaluation, 12/13/20, at 45 ("[Father] had transferred R.M.L. to another school").

In any event, the trial court was using this fact as one of many to support its conclusion that Father was making important decisions about the children's education and health unilaterally and without the input of Mother. **See** 23 Pa.C.S.A. § 5328(a)(13). There is ample support in the record for this conclusion. **See e.g.** N.T. Hearing, 7/18/20, at 212 (Marks testifying that Father was engaging in "solo parenting" regarding decision making); N.T. Hearing, 7/22/20, at 232-240 (Mother discussing not being consulted about the removal of R.M.L.'s wisdom teeth); **Id**. at 263 (Mother stating Father did not tell her he was drug testing R.M.L.); **Id**. at 303-307 (Mother discussing how she was not included in the decision to re-enroll R.M.L. in his original high school and how Father signed a school form overriding the school's recommendation for R.M.L.'s math class placement without consulting Mother). As such, this claim merits no relief.

Next, Father asserts that the trial court took its finding of fact that Father discussed financial matters with the kids "verbatim" from Mother's filing and argues, in essence, that the record does not substantiate this finding. Father's Brief at 28. Father is apparently referring to the following finding of fact by the trial court:

Father continuously, even after court order and admonition by this Court, speaks with the children about financial matters, including who is going to pay for their college education. Father uses his financial stronghold on the children and Mother to further alienate the children from Mother.

Trial Court Decision and Order, 10/3/2019, at 3.[5]

Contrary to Father's assertions, there is evidence in the record to support this finding. In fact, Dr. Lindenberg specifically testified that there was evidence that Father was speaking to the children about financial issues that were more proper topics for a discussion between Mother and Father, such as who was paying for college and an SAT course in which Father had enrolled R.M.L. **See** N.T. Hearing, 7/18/2019, at 51. Dr. Lindenberg further testified that Father used his income, which was higher than Mother's, as leverage with the children and as a means to alienate them from Mother. **See id**. at 28, 52. **See also id**. at 203 (Marks testifying that Father "absolutely" was talking to the kids about financial matters such as whether Mother was able to contribute to college costs); N.T. Hearing, 7/22/19, at 294-296 (Mother recounting instances of R.M.L. asking about Mother's contribution to college costs at the request of Father). In light of this evidence, Father's claim that there is no support in the record for the trial court's finding that he was discussing financial matters with the children necessarily fails.

_____

[5] Notably, this finding of fact does not mirror Mother's finding of fact "verbatim," as Mother merely states in her filing that "Father discusses financial matters with the Children." Mother's Findings of Fact and Conclusions of Law at 10, 12.

Father also asserts that the trial court erred by adopting Mother's mischaracterization of the incident involving Father threatening Mother with pepper spray and spraying her with a garden hose as abuse perpetrated by Father. The trial court further erred, Father maintains, by using that single incident to find that "the second custody factor under 23 Pa.C.S.[A.] §5328 favors Mother." Father's Brief at 29. It is Father who mischaracterizes what the trial court found. In discussing Section 5328(a)(2), related to abuse committed by a parent, the court stated:

> This factor *slightly* favors Mother. *There has been no reported abuse by either party*, however, Father has threatened Mother with pepper spray and has soaked her with a garden hose in front of R.M.L. at Father's residence [while] demanding that she leave his front yard. The Court believes that behavior to be simply mean and vindictive especially in front of the children.

Trial Court Decision and Order, 10/3/19, at 7-8 (emphasis added).

Therefore, the trial court did not find that this incident "rose to the level of abuse," as Father maintains. Father's Brief at 29. In any event, Father does not dispute that the pepper spray/water hose incident, which is well documented throughout the record, occurred. Father instead appears to argue that the trial court should not have relied upon the incident because his actions were justified given that Mother was banging on his door and refusing to leave his property. However, Father testified to this effect at the hearing, *see* N.T. Hearing, 7/18/19, at 151-153, and the trial court clearly did not credit Father's theory that these circumstances warranted his actions of threatening Mother with pepper spray and dousing her with a garden hose in front of her child.

Father has failed to show that the trial court erred in its consideration of this incident.

Lastly, Father contends that there is no support in the record for the trial court's finding, in discussing Section 5328(a)(3)'s "parental duties performed by each parent on behalf of the child[ren]," that Father spent his time after work in "Dad's room." Father's Brief at 30. This final claim warrants no relief.

With regard to the "parental duties" factor, the court stated:

This factor favors Mother. Mother was the primary caretaker for the children during the parties' marriage. Father supported the family financially while Mother took care of the children. Even when Father did return from work in the evening, he would spend time in "Dad's room," a room reserved for Father to relax and not be bothered by the children. Mother, with little or no assistance from Father, handled the feeding, clothing, bathing, and scheduling of activities during the parties' marriage and still solely manages M.J.L.'s food allergy medical appointments. During the parties' marriage, Mother would vacation with the children during the summer while Father worked.

Father helped coach some of the children's sports teams and has now assumed many of the parenting tasks as a result of and in pursuit of his alienation of Mother and increasing emotional separation. Presently, when Father and Mother attend the children's sporting events, Father will petulantly leave the event so as to dramatically demonstrate his disdain for, and to embarrass Mother.

Trial Court Decision and Order, 10/3/19, at 8.

As a threshold matter, Father is incorrect that the "Dad's room" fact "appears nowhere in all of the testimony of record." Father's Brief at 30. To the contrary, Mother specifically testified as follows:

- 18 -

Q    So when you were living together, at nights or on the weekends, would dad remove himself from the family?

A    Yep. It's called Dad's room. It's the front room. He would sit there all the time and watch Fox news incessantly or sports, all day every day. They call it Dad's room.

N.T. Hearing, 7/22/2019, at 289. Again, the court was free to credit this testimony, as it clearly did. **See Page**, 59 A.3d at 1130.

Even assuming that Father was correct that the record was devoid of any support for the fact that he retreated to "Dad's room," the trial court's use of this fact was clearly geared towards bolstering its conclusion that Mother was the primary caregiver for the children during the marriage. There is ample evidence in the record, even if we were to remove the "Dad's room" fact from consideration, to support this conclusion. **See** N.T. Hearing, 7/22/19, at 284-288 (Mother testifying about the parental duties she performed during the marriage and how she was the primary caregiver).

We find no merit to any of Father's contentions that the trial court's findings of fact were not supported by the record or that the court misapplied the factors enumerated in Section 5328(a). Rather, as the trial court stated, the court "considered all of the testimony, interviewed the Children, considered the custody factors as outlined in [Section 5328(a)], and after weighing those statutory factors" arrived at a custody order that it determined, in its discretion, to be in the best interests of R.M.L., M.J.L., D.M.L. and D.J.L. Trial Court Memorandum Opinion, 11/12/19, at 3-4.

We recognize that this order represents the "drastic change" the trial court found was called for in this case. However, we are mindful of our standard of review of custody orders, and Father has simply not shown, nor does our own review of the record disclose, any abuse of discretion on the part of the trial court in issuing this custody order. Despite this, we recognize that Mother has had primary physical and sole legal custody of the children for close to a year now and that Gottleib practices out of state. In light of this passage of time, as well as the travel limitations caused by the national pandemic we are enduring, we note that nothing in this Opinion is meant to preclude either party from petitioning the trial court to consider whether the intensive reunification counseling remains in the best interests of the children.

Order affirmed. The stay this Court granted regarding Mother's and the four children's participation in intensive reunification counseling with Gottleib pending this appeal is lifted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2020

- 20 -