J-A24017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMANDA COLLINS N/K/A AMANDA CONNELLY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1253 EDA 2022 |
| MICHAEL COLLINS | : | |

Appeal from the Order Entered April 18, 2022
In the Court of Common Pleas of Bucks County
Civil Division at No(s):  2018-60181

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED NOVEMBER 22, 2022**

Amanda Connelly ("Mother") and Michael Collins ("Father") entered into a stipulated custody agreement regarding their now five-year-old child, A.C. ("Child"), and the Bucks County Court of Common Pleas entered an order approving the agreement. The court ultimately modified the custody order, allowing Father's younger sister, C.K., ("Paternal Aunt") to have unsupervised contact with Child during Father's custodial time and allowing Father's mother ("Paternal Grandmother") to have supervised contact with Child during Father's custodial time. Mother appeals that modified order, arguing that this modification puts Child's safety at risk and is not in Child's best interests. She also complains the court abused its discretion by finding that Father was not in contempt of the order. After review, we find that Mother has either waived

her claim or failed to establish the court abused its discretion. We therefore affirm.

The facts leading up to the modification of the custody order are not in dispute. Mother initially filed a complaint in custody for Child in February 2018, and Mother and Father entered into a stipulated custody agreement. The court entered a custody order approving that agreement on February 8, 2018. Under that order, Mother and Father shared legal custody, with Mother having primary physical custody and Father having partial physical custody every other Friday night. The stipulated order also specifically provided that "at no time during Father's partial custody or at any other time shall Father have [Child] in the company of [Father's older sister, J.C.] or [Paternal Grandmother]." Custody and Stipulation Order, 2/8/18, at 2, ¶ 11.

Mother sought a temporary protection from abuse ("PFA") order against Father in June 2020, which the trial court granted. The PFA order limited Father's contact with Child to phone/Facetime and Zoom calls, and awarded temporary sole physical custody to Mother. This PFA order was in effect from July 27, 2020 through July 25, 2021.

On June 17, 2021, Mother filed a petition to modify the custody order, seeking sole physical and legal custody of Child. Mother asked that Father only be allowed supervised visitation as she had recently become aware that Father had been convicted of sexual assault in 2004.

Father also filed a petition for modification of the custody order in July 2021. In this petition, Father sought additional time with Child and requested that "there be no restrictions such as supervised visit[ation] nor avoidance of [Father's] family members." Petition on Behalf of Defendant Michael For Modification of a Custody Order, 7/31/21, at 3. The court scheduled a conference on both Mother's and Father's modification petitions for October 15, 2021.

Mother and Father, however, entered into another stipulated custody agreement, which the trial court entered as an order on October 28, 2021. This stipulated order awarded Mother primary physical custody, but it also provided Father with additional custody time. Specifically, Father was to have physical custody of Child: one weekday from 5 p.m. to 7 p.m. every week, every other weekend from Friday evening through Sunday evening, on certain holidays, and for two weeks of vacation each year. The stipulated order further provided that "[u]nder no circumstances shall a person with a violent criminal history be permitted around [Child]." Stipulation and Agreement Regarding Child Custody, 10/27/21, at 4, ¶ 6. The order also provided that "neither party shall disparage the other in front of [Child], nor allow others to do so in [Child's] presence, during his/her respective period of custody." *See id.* at 4, ¶ 10.

Mother filed a petition of contempt just days after the court entered the stipulated custody order. In her petition, Mother argued generally that Father

had violated the custody order by disparaging her in front of Child and by allowing Child to be around individuals with a violent criminal history. She did not name those individuals in the petition.

A custody conference was held on the petition, but the parties were not able to fully resolve the issues and the matter was listed for a hearing. In her report, the custody conference officer noted Mother's and Father's unresolved dispute regarding whether Paternal Aunt and Paternal Grandmother should be permitted any contact with Child. The report included Mother's concerns regarding Paternal Grandmother, who had been convicted of child endangerment in 1996, and Paternal Aunt, who had been convicted of armed robbery and assault in 2016. The report also noted Father's position that Child should be allowed to have contact with Paternal Grandmother, given the age of the endangerment conviction at issue, and that Child should also be allowed to have contact with Paternal Aunt, as she had recently been released from prison after serving her sentence for the armed robbery. *See* Report of the Custody Conference Officer, 12/16/21, at 2-3.

The matter proceeded to a hearing on April 6, 2022, with the issues limited to whether Father was in contempt of the custody order because he had made disparaging remarks about Mother or allowed Child to be around Paternal Grandmother and Paternal Aunt, and whether the custody order

should be modified to allow Child to be in the company of Paternal Grandmother and Paternal Aunt during Father's custodial time.[1]

Mother testified at the hearing. She essentially maintained that both Paternal Grandmother and Paternal Aunt were violent individuals who should not have any contact with Child. To that end, Mother testified that Paternal Grandmother had been convicted of child endangerment and had a past of being violent towards her children, causing their removal from her care at one point. Mother further testified that Paternal Aunt had been convicted of robbery involving a firearm and then was convicted in November 2021 for an offense stemming from her involvement in a physical altercation. Mother also maintained that Child had been around both Paternal Grandmother and Paternal Aunt during Father's custody time, which violated the terms of their custody order prohibiting contact with individuals with a violent criminal history. According to Mother, Father had also violated the custody order by making disparaging remarks about her on Facebook posts and in text messages, which were admitted into evidence. Mother also testified that she had a current PFA order against Father.

---

[1] Prior to the hearing, Mother filed a modification and amended contempt petition, wherein she requested that the custody order be modified to specifically name the individuals who were prohibited from being in Child's presence. Presumably, Mother's request included Paternal Grandmother and Paternal Aunt. In his answer, Father averred that neither Paternal Grandmother or Paternal Aunt were violent individuals.

Paternal Aunt testified after Mother. Paternal Aunt reported she had been released from prison for the robbery conviction in August 2020 and following that release, had been convicted of disorderly conduct. She shared she had a history of drug addiction and mental illness, but was sober and attending support programs, though she was not currently in treatment. Paternal Aunt further testified she had been removed from the care of Paternal Grandmother when she was a child, and agreed she had a "traumatic childhood." N.T., 4/6/22, at 64. However, according to Paternal Aunt, she now sees Paternal Grandmother on an almost-daily basis, and Paternal Grandmother loves Child very much and does not pose any threat to him. *See id.* at 67.

Father then took the stand. He testified that Mother and Paternal Grandmother had a history of fighting. He conceded he had been removed from Paternal Grandmother's care when he was a child due to violence and that her behavior can be erratic. Father asserted, however, that he wanted Child to have a relationship with Paternal Grandmother and Paternal Aunt because they love Child. *See id.* at 77-78. He insisted he had never seen Paternal Grandmother or Paternal Aunt hurt or berate Child. *See id.* at 78.

Following the hearing, the court entered an order denying the petition for contempt, citing insufficient evidence. The court also modified the custody order so Paternal Aunt "shall not be restricted from having contact with [Child]" and Paternal Grandmother "shall only be allowed to be in the presence

of [Child] if Father is physically present with her at the time." Order, 4/19/22, at 2.[2]

Mother filed a timely notice of appeal. Although Mother presents four separate questions in her statement of questions presented section, she provides only a single argument in the argument section of her brief. In essence, Mother contends the trial court abused its discretion by modifying the custody order to allow Paternal Aunt and Paternal Grandmother, who Mother asserts have criminally violent backgrounds, to have contact with Child and also abused its discretion by not finding Father in contempt. We conclude Mother has failed to establish that the trial court committed an abuse of discretion on either front.

"Our standard of review over a custody order is for a gross abuse of discretion." ***A.L.B. v. M.D.L.***, 239 A.3d 142, 147 (Pa. Super. 2020) (citation omitted). Such an abuse of discretion will only be found if the "trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." ***Id.*** (citation omitted).

Additionally, when we review a custody order:

> We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making

---

[2] The order also specifically provided that K.K., Father's stepfather, is not allowed to have any contact with Child. That modification is not contested.

independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

*Id.* at 147-148. (citation omitted).

As with any custody matter, including petitions for modification, the paramount concern is the best interest of the child involved. *See Johns v. Cioci,* 865 A.2d 931, 936 (Pa. Super. 2004). Relevant to the case at hand, if it is in the best interest of a child to have contact with a third party, the trial court may allow for that contact. *See MacDonald v. Quaglia*, 658 A.2d 1343, 1346 (Pa. Super. 1995).

Here, Mother claims the court erred by modifying the custody agreement to allow Child to be in the presence of Paternal Grandmother and Paternal Aunt. In support, Mother recites testimony given at the hearing, and makes general references to the evidence she presented at the hearing about Paternal Aunt's and Paternal Grandmother's criminal history, history of drug abuse and mental illness and lack of a bond with Child. She summarily asserts that this evidence "should be sufficient enough to find a finding that Paternal Aunt and Paternal Grandmother should not be around [Child], and can be detrimental to [Child's] wellbeing and safety." Appellant's Brief at 11.

In effect, Mother's entire argument amounts to no more than a disagreement with the court's determination that, based on the testimony and

evidence presented, it was in Child's best interest to allow Paternal Grandmother and Paternal Aunt to be in the company of Child during Father's custodial time. Merely expressing one's disagreement with the court's decision, as Mother does here, simply does not establish that the court's conclusions were unreasonable in light of the record or that the court committed a gross abuse of discretion by allowing contact between Child and Child's two paternal relatives. *See M.D.L.*, 239 A.3d at 147-148.

Nor do we discern any abuse of discretion by the trial court, which extensively explained its reasons for allowing the contact:

> Although there may have been criminal acts in the past by Paternal Aunt and Paternal Grandmother, said acts were both attenuated in time and place, and had not been directed toward [Child]. Further, there was no evidence presented that Paternal Aunt had ever been violent toward [Child], or any other child.
>
> Mother did not present any reports or clinical notes from therapists, doctors, teachers, or counselors supporting her petition to bar Paternal Aunt and/or Paternal Grandmother from contact with [Child].
>
> Paternal Aunt conceded that she had been involved in an armed robbery for which she completed her sentence. … Paternal Aunt said she had been in therapy for drug addiction, and [had] been in [various support] programs.
>
> Paternal Grandmother and Paternal Aunt have both been diagnosed as bipolar and are prescribed Seroquel. Paternal Aunt credibly testified that Paternal Grandmother loves [Child] and does not constitute a threat to him. Nonetheless, the Court did place the restriction that Father must be in [the] presence of Paternal Grandmother and [Child], at all times, during any periods of contact.

***

Father disputed Mother's claims that Paternal Grandmother and/or Paternal Aunt posed a threat to [Child]. Father testified that both the Paternal Grandmother and the Paternal Aunt loved [Child] and would never harm [him].

On cross-examination, Father conceded that a video of an altercation between Paternal Grandmother and Mother was authentic, but he said it dated back to approximately 2017. Father testified that Paternal Grandmother had been violent towards him when he was a child. Mother testified that she herself had been the victim of child abuse in her youth, and that Father and her shared a background of having been abused as youngsters.

No evidence was adduced at the April 6, 2022 hearing that Paternal Grandmother or Paternal Aunt had ever committed any violent act against [Child] or threatened [Child] with violence. Also, although Paternal Aunt had been incarcerated for participating in a robbery, she had served her time and obtained post release counseling.

Trial Court Opinion, 5/24/22, at 8-10 (citations to notes of testimony omitted).

The court stated that after hearing "the testimony and evidence presented by both Father and Mother[, it] had reasonably determined under the applicable standard of review that the best interests of [Child] were to permit contact [with] the Paternal Aunt, and supervised contact [with] the Paternal Grandmother." *Id.* at 6. Again, we see no abuse of discretion in the trial court's conclusion, and Mother's bald protests to the contrary do not convince us otherwise.

Mother also summarily asserts that Paternal Aunt and Paternal Grandmother have no standing in this custody matter, and therefore no custodial rights to Child. In the first place, this argument is waived for its sheer lack of development. *See Commonwealth v. Love*, 896 A.2d 1276, 1287

(Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived).

However, even if not waived, the issue lacks merit. As the trial court repeatedly stated, it had not vested any independent custodial rights in Paternal Aunt or Paternal Grandmother, but rather, had merely allowed them to have contact with Child during Father's custodial time pursuant to Father's custodial rights. That contact was, the trial court explained, merely a modification of Father's custodial rights as outlined in the order. Mother does not even address these conclusions by the trial court, much less establish they were in any way erroneous.

We add that neither Paternal Aunt nor Paternal Grandmother filed any petition seeking any kind of custodial rights to Child. Rather, it was Father's and Mother's filings which sought clarification in the custody order as to whether Paternal Grandmother and Paternal Aunt were permitted to be in the presence of Child during Father's custody time. The court modified Father's custody rights in the custody order in response to those filings. Accordingly, in the end, Mother has failed to show, and we fail to see, an abuse of discretion on the trial court's part when it modified the custody order.

Mother also argues the court abused its discretion by denying her petition for contempt. Much like in her first issue, Mother summarily claims the trial court abused its discretion by not finding the evidence she presented at the hearing established Father had made disparaging remarks about Mother

in front of Child. She points out the trial court found that Father only told Mother he was going to make disparaging remarks to Child, not that he had. Mother asserts, however, that her testimony and the Facebook posts she presented as exhibits at the hearing showed Father had, in fact, done so. Nowhere in her brief does Mother specify what testimony or which Facebook posts she is referring to, where they are in the record, or how their content supports her contentions. This claim is waived. *See Love*, 896 A.2d at 1287; Pa.R.A.P. 2119(c) (providing that when an appellate brief references a matter appearing in the record, the brief must identify the place in the record where the matter appears); Pa.R.A.P. 2119(d) (stating that when the refusal to find a fact is argued, the argument must "contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2022