J-S13016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| JACQUELYN RUDZINSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER SALMON | : | No. 2823 EDA 2022 |

Appeal from the Order Entered November 2, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at 0C2000950

BEFORE:   NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                **FILED JUNE 20, 2023**

Jacquelyn Rudzinski (Mother) appeals from the order which granted shared physical custody of A.R. (Child) to Mother and Christopher Salmon (Father), and sole legal custody of Child to Father.  We affirm.

Child is two years old, having been born in August 2020.  The trial court explained:

> The parties to this action were in a relationship from November 2014 to May or November 2019.  Notes of Testimony 10/26/22, 15.  [C]hild was conceived sometime in November of 2019.  NT 20.  Mother lives in a two-bedroom home in Northeast Philadelphia with her three children.  NT 13, 48.  Mother has an eleven-year-old child from a previous relationship and a six-month-old child with her current partner.  NT 45-46.  Mother's fiancé and the father of her six-month-old does not live in the home and works as an [ICU] doctor.  NT 46, 87.  Mother works at Thomas Jefferson Hospital as a respiratory therapist.  NT 13-14.  Mother works twelve-hour shifts, three days a week.  NT 14, 84.

_____

* Former Justice specially assigned to the Superior Court.

Father lives in a three-bedroom home with his wife in Bucks County. NT 168. In addition to [his w]ife's four-year-old child from a previous relationship, Father and wife are the parents of a six-month old. NT 168-169. Father works in sales and financing at automotive dealerships and recently completed training at a new dealership. NT 169-170. He testified that once training is completed, he will be working 5 days a week. NT 173. The parties live approximately 35 minutes apart. NT 327.

Trial Court Opinion, 1/12/23, at 6-7 (footnotes omitted).

On September 30, 2020, Mother filed a complaint seeking sole physical and legal custody of Child.[1] Father filed an answer and counterclaim on April 16, 2021. The parties entered into interim consent orders in May 2021 and October 2021. On February 25, 2022, Father filed a motion for special relief. The trial court held "a protracted hearing" on October 26, 2022. Order, 11/2/22, at 1. After a "full day hearing," the court "held the matter under advisement." Trial Court Opinion, 1/12/23, at 2. On November 2, 2022, the court entered a four-page order detailing the award of shared physical custody "on a 2-2-5-5 basis." Order, 11/2/22, at 1. The court also determined, "[i]n accordance with the custody factors stated on the record, the court placing

_____

[1] Father had filed for custody in Bucks County, and the trial court in Bucks County determined "Philadelphia was the proper venue." Trial Court Opinion, 1/12/23, at 1 n.1.

heavy weight on factors #1, 13 and 16, Father shall have sole legal custody of the child."[2] *Id.* at 2.

On November 4, 2022, Mother timely filed a notice of appeal and concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2).

Mother presents the following question for review:

Did the Court of Common Pleas abuse its discretion in determining child custody and parenting time with regard to the parties' [C]hild, A.R.?

Mother's Brief at 1.

Mother argues the trial court "failed to even acknowledge let alone weigh and balance [M]other's primary and most times sole caretaking role for [Child]." *Id.* at 15. Mother claims the court disregarded Mother's "past role as the child's primary caretaker," which is "an important and often critical factor … now reflected in [the Child Custody Act]." *Id.* (citation omitted); *see also* Mother's Reply Brief at 1-5. Mother asserts the trial court "misconstrued" and "misapplied" this Court's decision in *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa. Super. 2019). Mother's Brief at 19-21. Throughout her argument, Mother revisits the hearing testimony, and assails the weight the trial court gave the

---

[2] Factor 1 requires that the court consider which "party is more likely to encourage and permit frequent and continuing contact between the child and another party"; factor 13 requires consideration of "the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another"; and factor 16 provides for consideration of "any other relevant factor." *See* 23 Pa.C.S.A. § 5328(a).

testimony in considering the statutory factors which informed its decision. *Id.* at 16-32.

Father argues the trial court's order is proper. *See* Father's Brief at 3-12. Father maintains the trial court considered the statutory factors and "ruled correctly … based on the testimony given at trial." *Id.* at 11.

Preliminarily, we recognize:

Our standard and scope of review of a custody order is well-established. Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias[,] or ill[-]will as shown by the evidence of record.

*A.L.B. v. M.D.L.*, 239 A.3d 142, 147 (Pa. Super. 2020) (citation and quotation marks omitted).

Further,

[w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the [trial court] who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 147-48.

Prior to "making an award of custody, the Child Custody Act requires trial courts to consider all 16 factors set forth at 23 Pa.C.S.A. § 5328(a) to the

extent the factors are relevant." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) (citation omitted). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). In all custody matters, "the paramount concern is the best interest of the [child] involved." *A.L.B.*, 239 A.3d at 148.

Mother asserts the trial court erred in relying on *M.J.M.* and failed to "properly weigh and consider Mother's primary and at times sole caretaking role for [Child,] which should have been a very important consideration in the [trial] court's custody decision." Mother's Brief at 19. Mother states that in *M.J.M.*, this Court "merely recognized that the 'primary caretaker doctrine' is no longer needed as a stand-alone, common[-]law doctrine, because the statutory factors now reflect this important consideration." *Id.* We disagree.

In *M.J.M.*, a mother appealed from a custody order granting primary physical custody of the parties' child to the father. The mother asserted the trial court erred "because the opinion it issued in support of its determination was insufficient in content." *M.J.M.*, 63 A.3d at 334. The mother claimed, "the trial court's articulation of its reasons must be detailed and extensive." *Id.* at 336. In rejecting the mother's argument, we stated: "[T]he trial court did precisely what it should have done; it weighed the entirety of the section 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the

custody award." *Id.* We analyzed the "major revisions" to the Child Custody

Act which took effect in 2011:

> [R]evisions [to the Child Custody Act] included the addition of section 5328, which … sets forth a list of factors that a trial court must consider when making a custody determination. Prior to listing the specific factors, this provision provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S.A. § 5328(a).
>
> The language of this statute is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" *Id.* "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see also Ario v. Ingram Micro, Inc.,* 600 Pa. 305, 317, 965 A.2d 1194, 1201 (2009). If the Pennsylvania Legislature intended for extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. Stated another way, the absence of such language indicates that **our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker**.
>
> Furthermore, the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. *See, e.g.,* 23 Pa.C.S.A. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

- 6 -

In short, the Legislature has created a mandatory inquiry to aid trial courts in determining the best interests of the child in a custody dispute. In doing so, it articulated the components of a parent's obligations and characteristics, and a child's needs and welfare, that must be incorporated in the trial court's custody decision where the parents are incapable of doing so on their own. In setting forth these factors, the Legislature has required the trial court to give additional weight *only* to factors that it finds affect the safety of the child. This language is clear, and **we cannot expand it to provide that a trial court must also give weighted consideration to a party's role as primary caretaker**. We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the Legislature has established, and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable.

We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. … [**A] trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors**, and **to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so** under subsection (a)(16). **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35–36 (Pa.Super.2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

*M.J.M.*, 63 A.3d at 338-39 (italic emphasis in original, bold and underline emphasis added).

Like the trial court, we find this Court's discussion in *M.J.M.* relevant to the parties' dispute. Instantly, the trial court referenced all 16 factors set

forth in 23 Pa.C.S.A. § 5328(a). *See* N.T., 10/26/22, at 324-32; Trial Court Opinion, 1/12/23, at 7-9 (trial court stating it "considered all of the statutory factors, placing its reasoning on the record." (record citation omitted)). The court further observed that parties "cannot dictate the amount of weight the trial court places on evidence." Trial Court Opinion, 1/12/23, at 12.

Mother testified that she and Father dated from 2014 to 2019. N.T., 10/26/22, at 15, 131. Child was born in August 2020, and was two years old at the time of the custody hearing. *Id.* at 13, 42. Mother described her communication with Father as "very conditional," and previously "volatile." *Id.* at 36, 92. Mother did not receive text messages Father sent two weeks after Child's birth, "because [Father] was blocked." *Id.* at 98-99. Mother stated that she "blocked [Father i]n March," approximately five months before Child was born. *Id.* at 99. Mother testified that she did not permit Father any time with Child prior to the parties agreeing to the first interim court order in May 2021, when Child was seven months old. *Id.* at 99-100. Mother explained that among other concerns, she was uneasy with Father's drinking. *Id.* at 103-04.

Mother works three 12-hour shifts a week as a respiratory therapist. *Id.* at 13-14. According to Mother, her family members or fiancé care for Child when she works. *Id.* at 45. Mother testified that she is home with Child when she is not working. *Id.* at 76. Mother only works weekends if Child is

with Father; she also plans to reduce her work schedule, but stated, "I'm not part-time yet." ***Id.*** at 84-85.

Father testified that he was starting a new job and would be working five days a week, from 9 a.m. to 4 p.m. or 5 p.m. ***Id.*** at 173. He admitted to having two convictions of driving under the influence (DUI), with the most recent conviction occurring in 2015. ***Id.*** at 175. Father testified he has not had "any problems since then." ***Id.*** at 213.

Father confirmed that Mother blocked him on her cell phone in March 2020. ***Id.*** at 181. As a result, Father contacted "pretty much all of [Mother's] immediate family," because he wanted to know "what's going on? I need[ed] to know if my child is healthy." ***Id.*** at 182. According to Father, he learned through "a family member, [Child] was born[,] … was a boy, and he was healthy." ***Id.*** at 183. Father stated he "went immediately" to court. ***Id.*** at 184. Father first met Child when Child was seven months old and the parties consented to an interim order which provided Father with custody of Child for two hours on Thursdays and Sundays. ***Id.*** at 183-84. In October 2021, the parties entered into a second order which increased Father's custody to every other Thursday from 10 a.m. to 6 p.m., and on alternating weekends from Friday at 5 p.m. to Sunday at 6 p.m. ***Id.*** at 42.

Father stated: "I'm not trying to take [Child] away from [Mother], I just want my shared time." ***Id.*** at 178; ***see also id.*** at 208 (Father repeating, "I'm not trying to take anything away from [Mother].").

After hearing the evidence, the trial court recessed before reconvening to place its findings on the record. *Id.* at 324-32. The court identified and addressed the 16 factors set forth in section 5328 of the Child Custody Act. The court stated:

> It is extremely clear, from the evidence presented, that both households provide, and will continue to provide and maintain a loving, stable, consistent, and nurturing relationship, adequate for [C]hild's emotional needs. [C]hild is very clearly bonded with both families, and appears to be happy, healthy, and safe.

*Id.* at 326-27. However, the court also found the parties had a "high-conflict relationship" and were "not capable of co-parenting." *Id.* at 328.

The trial court took the matter under advisement and entered its custody order the following week. Order, 11/2/22, at 1-4. The order specified: "In accordance with the custody factors stated on the record, the court placing heavy weight on factors #1, 13 and 16, Father shall have sole legal custody of Child." *Id.* at 2. As noted, factor 1 considers which "party is more likely to encourage and permit frequent and continuing contact between the child and another party"; factor 13 concerns "the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another"; and factor 16 provides for consideration of "any other relevant factor." 23 Pa.C.S.A. § 5328(a). In emphasizing these three factors, the trial court opined: "In an ideal world, parents would work together …." Trial Court Opinion, 1/12/23, at 14. We discern no abuse of discretion.

- 10 -

It is the trial court's role "as the finder of fact[,] to determine which factors are most salient and critical in each particular case." **M.J.M.**, 63 A.3d at 339. The record demonstrates the trial court "did precisely what it should have done; it weighed the entirety of the section 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the custody award." **Id.** at 336. Accordingly, Mother's argument does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2023