J-A06026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SEAN W. HEFFLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRA L. HEFFLEY | : | |
| | : | |
| Appellant | : | No. 977 WDA 2023 |

Appeal from the Order Entered August 16, 2023
In the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD19-009308-015

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED: April 29, 2024**

Appellant, Terra L. Heffley ("Mother"), appeals from the August 16, 2023 order, entered in the Court of Common Pleas of Allegheny County, that granted the petition for modification of the existing custody order filed by Sean W. Heffley ("Father") with respect to the parties' children, Z.H., born in October 2010; S.H., born in January 2013; B.H., born in May 2014; and A.H., born in April 2016 (collectively, "the Children"). Upon careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. Mother and Father (collectively, "Parents") married in June 2009. *See* N.T., 7/22/22, at 12. During their marriage, Parents resided together in Allison Park, Pennsylvania, until they separated in 2018. *See id.* at 23. Following their separation, Parents continued to reside, separately, in

the same geographic area. Mother returned to work as a healthcare concierge sometime in 2022.[1] ***See id.*** at 7. She works remotely and has flexible hours. ***See id.*** Father is a principal sales engineer for a cyber security company. ***See*** N.T., 5/26/22, at 179. He travels approximately two nights a month for his job, but he recently obtained a new position where he believes he will be required to travel less. ***See id.*** at 179-80.

For approximately one year following their 2018 separation, Mother had an "open-door policy" for Father to see the Children at her home. ***See id.*** at 8; ***see also*** N.T., 7/22/22, at 220-21. Father initiated the instant custody action on November 26, 2019. The same day, Mother initiated a protection from abuse ("PFA") action and a child custody action. The trial court granted Mother a temporary PFA order on behalf of her and the Children. Following a hearing on December 6, 2019, the trial court entered a final PFA order, and an interim custody order awarding Parents shared legal custody, Mother primary physical custody, and Father partial physical custody.[2, 3] ***See*** Interim

_____

[1] Mother had stopped working upon the birth of their first child in 2010. ***See*** N.T., 7/22/22, at 15.

[2] Mother alleged that Father engaged in a repeated pattern of abuse, stalking, and harassment, and she ultimately filed for a PFA following an alleged incident wherein Father "stuck his hand up my shorts." ***See*** N.T., 7/22/23, at 77-80. Father denied grabbing Mother but stated that he reached towards her. ***See*** N.T., 5/26/23, at 213.

[3] The Honorable Eleanor Bush presided over the PFA hearing and crafted Parents' custody order. Thereafter, the case has been handled by various
*(Footnote Continued Next Page)*

Order, 12/6/19. The court awarded Father seven dates of custody through December 2019, including one overnight visit. *See id.* Thereafter, starting in January 2020, the court ordered Parents to operate on a two-week rotating schedule.[4] *See id.*

Ultimately, following various petitions filed by Parents in 2020, the court entered an agreed-upon final custody order dated October 23, 2020 ("existing custody order"). The order awarded, *inter alia*, Parents shared legal custody and Mother primary physical custody subject to Father's partial physical custody. The court again devised a two-week rotating schedule wherein Father had physical custody of the Children on four days of the first week and three days of the second week. *See id.*

On February 16, 2021, Father filed a petition to modify the existing custody order based on his belief that Mother was alienating the Children from him. The trial court held hearings on May 26 and 27, 2022, and July 22, 2022, at which time the Children were eleven, nine, eight, and six years old, respectively. Therein, Father testified and adduced the testimony of Bruce Chambers, Ph.D., a licensed psychologist whom the court appointed to

_____

judges. Ultimately, the Honorable Dwayne D. Woodruff presided over the custody trial that led to the August 16, 2023 custody order that Mother appeals from.

[4] The first week Father had physical custody on Wednesdays from 4:30 p.m. until 7:00 p.m., and during the second week Father had physical custody of the Children on Wednesdays from 4:30 p.m. to 7:00 p.m. and Friday at 5:00 p.m. until Sunday at 12:00 p.m. *See* Interim Order, 12/6/2019.

- 3 -

conduct a psychological evaluation of the family; Carla Hudson, principal at the Children's elementary school; James Patrick Heffley, Jr., the Children's paternal grandfather; and Anna Meighan, the Children's therapist. Mother testified and presented the testimony of Shannon Edwards, Psy.D., a licensed psychologist and Parents' former co-parenting counselor; and Roseanne Naviglia, maternal grandmother. The parties' counsel and the court interviewed the two older children, Z.H. and S.H., *in camera*.[5]

Dr. Chambers testified that he met with Mother in August 2021, Father in September 2021, and interviewed the three oldest Children in September 2021. **See** N.T., 5/26/22, at 5, 12. Following these meetings, Dr. Chambers prepared a written report for the court. **See id.** He emphasized that there was no indication from his interviews with Mother or the Children that Father was perpetrating abuse against the Children. **See id.** at 7, 11. Dr. Chambers also determined that "[b]oth [Z.H.] and [S.H.] similarly had responses which suggested [over]-enmeshment" with Mother. **Id.** at 11-12. It is undisputed

---

[5] Aside from the testimonial evidence, the court admitted numerous exhibits proffered by Mother and Father. While the exhibits are not included with the certified record, we do not find this omission detrimental to our review given the testimony related thereto. We, however, remind counsel, "Appellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." **Commonwealth v. Wint**, 730 A.2d 965 (Pa. Super. 1999); **see also** Pa.R.A.P. 1921 Note (stating, "Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.") (citation omitted).

that the Children have an ongoing fear of COVID-19 which Dr. Chambers posits is "irrational" and has been "perpetuated" by Mother. *Id.* at 15-16. He also spoke with the Children's former principal and the Children's former counselor, both of whom related concerns about the Children's psychological well-being. *See id.*.

Dr. Chambers further testified he was concerned that the Children had a "disturbed" relationship with Father and recommended that Mother attend individual therapy and the family attend family therapy. Dr. Chambers testified about his concern that Mother has caused the Children to have an unrealistic fear of Father, despite there being no evidence of any abuse or mistreatment by him, and that Mother is the only person who can undo this damage. *See id.* at 17-18. Ultimately, Dr. Chambers recommended a shared custody schedule. *See id.* at 18.

Carla Hudson, the Children's school principal, testified that the Children refused to attend in-person school at the beginning of the 2021-2022 school year due to their concerns regarding COVID. *See id.* at 73, 84. Eventually, the three older children were enrolled in the North Allegheny Cyber Academy, while the youngest, A.H., attended school in person. *See id.* at 94.

Testimony from Parents revealed the contentious nature of their relationship. Father testified that he is hesitant to reach out to Mother due to the PFA order and that he is "fearful of everything I do and say to the [C]hildren, because of all of the [] CYS reports in the last two years." *Id.* at

130, 137. Despite the various reports, CYS has never determined any of the accusations to be founded. *See id.* at 131. Father testified that Mother does not support his relationship with the Children and that she is largely responsible for the Children's irrational fear of COVID. *See id.* at 229-33, 246. Father emphasized that it has been a struggle to get the Children to listen to him. *See id.* at 139.

Mother testified that the Children's view of COVID is "cautious, but manageable." *See* N.T., 7/22/22, at 44. She alleged that Father has not respected the Children's feelings regarding COVID and that he has taken the Children on trips when there were "no travel" policies in place. *See id.* at 44-48. She further stated that she wants the Children to attend school in-person, but she does not believe the three older children are ready. *See id.* at 53-54. Mother also raised concerns with Father's care, alleging that the Children come back to her unbathed, or not fed. *See id.* at 63-64.

Dr. Edwards testified that in July 2020, Parents commenced co-parent counseling. *See* N.T., 5/27/22, at 95. Dr. Edwards conducted an individual session with each Parent separately, held a session with the Children together, and performed three joint sessions with Parents. *See id.* During this time, Mother alleged that Father had inappropriately touched A.H. *See id.* at 95-96. Dr. Edwards spoke with A.H. and informed Mother that she should obtain a forensic interview of Child. *See id.* at 100. Ultimately, after consulting with a colleague, Dr. Edwards did not report the allegation. *See id.* at 99.

On August 16, 2023, approximately thirteen months after the final hearing date, the court awarded Parents shared legal and physical custody of the Children on an alternating weekly basis. The court further made determinations regarding, *inter alia*, the Children's summer vacation and holiday schedule.

Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion.[6]

On appeal, Mother raises the following issues which we have reordered for ease of disposition:

1. Whether the trial court erred and abused its discretion in granting shared physical and legal custody?

2. Whether the trial court erred by issuing a final order of court that contained provisions neither party requested and are not in the Children's best interests?

3. Whether the trial court erred and committed reversible error in failing to address the 23 Pa.C.S.A. § 5328(a) custody factors, including its failure to provide any basis for the final custody order of court?

4. Whether the trial court erred and violated Pennsylvania Rule of Civil Procedure 1915.4, regarding the prompt disposition of custody cases, by failing to list the matter for trial within 180 days, failing to commence trial timely, and taking more than one year to issue its final custody order?

---

[6] The trial court's Rule 1925(a) statement was untimely, and we remind the court of its duty to file a Rule 1925(a) statement within thirty days of its receipt of the notice of appeal. *See* Pa.R.A.P. 1925 (a)(2)(ii).

Mother's Brief, at 5 (cleaned up).

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. *See Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023)

> In reviewing a custody order
>
> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the [trial court] who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.L.B.,* 239 A.3d 142, 147-148 (Pa. Super. 2020).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." *Rogowski*, 291 A.3d at 61. (internal citation and quotation omitted). Pennsylvania law provides that the court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To that end, the Child Custody Act sets forth sixteen factors at § 5328(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209

A.3d 451, 460 (Pa. Super. 2019). While a court's consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (cleaned up).

These factors provide as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where

reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In order to evidence its consideration of these required elements, custody courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.

Super. 2013) (citation omitted). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id.* at 336.

Although Mother addresses her first and second issues collectively, we discern that they are distinct arguments. As such, we will address them separately.

In Mother's first issue, she argues the trial court erred in ordering shared physical and legal custody. *See* Mother's Brief, at 22. She asserts the trial court failed to appreciate the factual complexity of these matters, which involve contested allegations of abuse and parental alienation. *See id.* at 23. Mother further contends two forensic psychologists, Dr. Chambers and Dr. Edwards, testified at trial and Dr. Chambers did not consider collateral data. *See id.* at 24. Mother further argues the trial court nearly exclusively referred to Dr. Chambers in its opinion. *See id.* Mother concludes the court did not demonstrate the attention necessary to enter a custody order. *See id.*

In its Rule 1925(a) opinion, the trial court addressed the Section 5328(a) custody factors wherein it weighted Section 5328(a)(1), (4), (5), (7), (8), and (13) equally between the parties. *See* Trial Court Opinion, 11/8/23, at 7-9. The court attributed minimal weight to factors (2), (3), (6), (9), (10), (11), (12), (14), (15), and (16) as it determined them to be neutral between the parties or not applicable. *See id.*

- 11 -

Ultimately, the court summarized its conclusions as follows:

Based upon the evidence presented, Father's relationships with each of the children and the children's relationships with Father will improve with additional time spent with each other. Further, a co-parenting situation seems to allow for both parents to adequately and appropriately interact with the children and their school activities as well as being involved with the therapy sessions for the children. It is clear that a 50/50 award of both physical and legal custody of the children would benefit the children and improve their lives with Mother and Father. It is clearly in the best interests of the children to allow them to interact with both Mother and Father equally in family situations, school activities, and therapeutic situations.

*Id.* at 9.

To the extent Mother argues the trial court did not demonstrate the attention necessary to enter a custody order, we find this argument waived. Mother completely fails to develop this argument as she does not cite to any law nor are we aware of any that provides a standard for the amount of attention a court must demonstrate to enter a custody order. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011); *see also M.J.M.*, 63 A.3d at 336 (stating "there is no required amount of detail for the trial court's explanation.").[7]

Regarding Mother's related contention that the trial court afforded too much weight to Dr. Chambers' testimony, these arguments amount to nothing

_____

[7] We agree with Mother that the court's mention of 23 Pa. C.S.A. §§ 2511-(a)(2), (a)(5), (a)(8), and §2511(b), was careless. However, this appears to merely be a typographical error, not an indication that the trial court failed to consider the custody factors. *See* Trial Court Opinion, 11/8/23, at 1; Mother's Brief, at 17-18.

more than a bald attack upon the credibility and weight determinations made by the trial court. As related *supra*, "we must defer to the trial court who viewed and assessed the witnesses first-hand." ***Rogowski***, 291 A.3d at 60-61. The court was well within its discretion to rely on Dr. Chambers, who met with both parties, the Children, and various collateral sources. Although Mother offered the testimony of Dr. Edwards, Dr. Edwards was the co-parenting counselor for a limited time, approximately six sessions, before she was removed from the case. Dr. Edwards testified that Mother alleged Father inappropriately touched A.H., however, after speaking with A.H. and a colleague, Dr. Edwards did not report the allegation. ***See*** N.T., 5/27/22, at 95-100.

As related *supra*, Dr. Chambers emphasized the need for a shared custody schedule. ***See id.*** at 18. He further emphasized that Mother needs to show the Children that she supports Father to foster a better relationship between Father and the Children. ***See id.*** at 17-18. The court was well within its discretion to rely on the court-appointed, neutral third party that conducted a custody evaluation when crafting its custody order.

Further, regarding Mother's allegations of Father's abuse allegedly perpetrated against the Children, the court determined that it "does not find that there has been abuse, present or past by either party or any member of either party's household. The court finds that both parties are equally situated to provide adequate physical safeguards and supervision for the [C]hildren."

*Id.* at 7. As related *supra*, Dr. Chambers determined Father was not physically abusive with the Children. Mother did not provide him with any information indicating abuse and Dr. Chambers' interviews with the Children did not evidence any abuse had occurred in Father's home. *See id.* at 7, 11. Further, despite Mother's allegations, she consented to the October 2020 custody order that provided Father with additional physical custody rights. *See id.* at 162-63. Accordingly, the court did not abuse its discretion when it found that, based on the evidence presented, Father has not perpetrated abuse against the Children.

Regarding her second issue, Mother contends the subject order does not include agreements the parties made, namely, the removal of birthdays from the order and that neither party has physical custody for an entire school break. *See* Mother's Brief, at 23. Mother acknowledges that an agreement between the parties does not bind the court but posits that it is atypical for a court to disregard parties' agreements. *See id.*

In its opinion, the trial court stated that it based the custody order on the best interest factors of 23 Pa.C.S.A. § 5328(a), giving weighted consideration to those factors that affected the Children's safety. *See* Trial Court Opinion, 11/8/23, at 1. This was not an abuse of discretion.

Pursuant to Section 5328(a), "[i]n ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety

of the child. . . ." 23 Pa.C.S.A. § 5328(a); **see also Rogowski**, 291 A.3d at 60-61 ("the paramount concern is the best interest of the child involved."). In fact Mother herself acknowledges that the court was not required to follow any alleged agreements between the parties when it fashioned the August 16, 2023 custody order. **See** Mother's Brief, at 23. Accordingly, the court did not abuse its discretion or commit an error of law in crafting the custody award based on the best interest factors of Section 5328(a), rather than Parents' prior agreements.

In her third issue, Mother argues the trial court erred when it failed to address the Section 5328(a) custody factors prior to the deadline for Mother to appeal the August 16, 2023 custody order. **See id.** at 15-16.

It is unquestionable that, although the trial court analyzed the Section 5328(a) custody factors in its Rule 1925(a) opinion, the court failed to provide an analysis of the factors in open court or in a written opinion accompanying the August 16, 2023 custody order. Nevertheless, we discern no prejudice, and Mother does not claim any. The issues Mother presented in her concise statement are identical to the claims presented in her brief. **See id.** at 5; Rule 1925(b) Statement. Accordingly, as Mother had a full opportunity to present a comprehensive argument for appellate review, we decline to vacate the trial court's August 16, 2023 custody order.

In her fourth and final issue, Mother argues the trial court erred when it violated Pa.R.C.P. 1915.4(b), (c), and (d). Mother asserts the trial court (1)

failed to timely schedule the trial on Father's February 16, 2021 petition for modification; (2) failed to enter a scheduling order for the trial; and (3) failed to promptly issue a decision. *See* Mother's Brief, at 19-21. No relief is due.

Rule 1915.4 provides, in pertinent part, "within 180 days of the filing of the complaint either the court shall automatically enter an order scheduling a trial before a judge or a party shall file a praecipe, motion or request for trial." Pa.R.C.P. 1915.4(b). "If it is not the practice of the court to automatically schedule trials and neither party files a praecipe, motion or request for trial within 180 days of filing of the pleading, the court shall, sua sponte or on motion of a party, dismiss the matter[.]" *Id.* "[T]rial shall commence within 90 days of the date the scheduling order is entered [and ] . . . conclude[] not later than 45 days from commencement." Pa.R.C.P. 1915.4(c). "The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless … the court extends the date for such decision [for good cause]." Pa.R.C.P. 1915.4(d).

As a preliminary matter, this claim is waived because Mother failed to preserve these issues as she did not "make a timely and specific objection at the appropriate stage of the proceedings before the trial court." *In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) ("In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.");

*see also Nelson v Kresge*, 1417 EDA 2021 at 19 (Pa. Super., filed February 23, 2022) (unpublished memorandum) (holding that the father due no relief where he failed to raise any prior objection as to timing and/or scheduling or make any requests for earlier dates during disposition of the petitions for modification and contempt) (citing **Fillmore v. Hill**, 665 A.2d 514, 515-516 (Pa. Super (1995) ("On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.")).

Mother did not move to schedule trial when the court failed to do so; nor did she file a motion to dismiss when trial was not timely commenced. **See** Pa.R.C.P. Pa.R.C.P. 1915.4(b). Instead, Mother raised these timeliness issues for the first time in her appeal after the trial court awarded Parents shared physical and legal custody. Moreover, regarding Pa.R.C.P. 1915.4(c) and (d), even if Mother's timeliness challenges were not waived, we would decline to vacate the order because these subsections do not provide a remedy or any other sanction if the trial court does not comply with the time limits. **See E.B. v. M.B.**, 3 WDA 2023 at *6 (Pa. Super. filed Aug. 15, 2023) (unpublished memorandum) (declining to vacate a custody order due to a violation of Pa.R.C.P. 1915.4(d) because it does not provide a remedy). Accordingly, Mother's fourth claim does not merit relief.

Based on the foregoing, we conclude that none of Mother's contentions entitle her to relief. Accordingly, we affirm the order of the trial court.[8]

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/29/2024

---

[8] Although we affirm the trial court's decision, we note our displeasure with the trial court's handling of this case. The amount of time it took to litigate the custody modification order and for the court to file its opinion was clearly unreasonable and in violation of the Rules of Civil Procedure. Similarly, we must again remind the court that, in child custody matters, it is obligated to "set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013).