J-S14031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LIZMARIE PEREZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY J. SMITH | : | |
| | : | |
| Appellant | : | No. 1792 MDA 2025 |

Appeal from the Order Dated December 11, 2025
In the Court of Common Pleas of York County
Civil Division at No. 2025-FC-000814-03

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: JUNE 4, 2026**

Bradley J. Smith (Appellant) appeals *pro se* from the order awarding sole legal custody and primary physical custody of the parties' children to Lizmarie Perez (Mother).  We affirm.

The parties have two children:  L.S., born in 2016; and N.S., born in 2018 (collectively, Children).  On April 16, 2025, Mother filed a complaint for legal and primary physical custody of Children.  Mother averred that Children had been living with her exclusively for more than three years.  Complaint, 4/16/25, at ¶ 6.  She explained:

> The parties separated on January 18, 2022, and Father filed a Complaint in Divorce ….  Mother has exercised sole physical custody of [C]hildren since the parties separated until February 2025.  Since February 2025, Father exercise[d] partial physical custody every two (2) weekends from Saturday at 10:00 a.m. to 8:00 p.m. and Sunday at 10:00 a.m. to 7:30 p.m.  Father does not have any overnights.  Father only recently began exercising

partial custody upon the expiration of a three (3) year Protection from Abuse [(PFA)] Order.

Conciliation Conference Memorandum, 6/5/25, at ¶ 4.

On June 25, 2025, the trial court entered an interim order granting the parties shared legal custody, granting Mother primary physical custody, and granting Appellant "supervised partial physical custody of [C]hildren every other Saturday and Sunday from 10:00 a.m. until 7:30 p.m." Interim Order for Custody Pending Trial, 6/25/25, at 5.

On August 22, 2025, the parties appeared before the trial court for a pre-trial conference. Mother's counsel relayed that Appellant's supervised visits had not occurred because he had not filed a criminal history verification form or affidavit of supervision. N.T., 8/22/25, at 3. Counsel stated:

> [Appellant] has seen [C]hildren twice while [M]other was present for a brief period of time that she allowed him to meet, like, at an ice cream shop[,] and that's the only contact he's had.
>
> … I sent [Appellant] a sample of the affidavit, the supervision affidavit and the criminal history verification to encourage him to complete that so that the supervised visits can begin and I have not received a response.

*Id.*

When the trial court attempted to question Appellant, he refused to provide substantive answers and eventually stopped speaking. For example,

> THE COURT: [Appellant], have you filed a pretrial memo and parenting plan?
>
> [APPELLANT]: First of all, I'm going to make a special appearance request --

THE COURT: You're either before the [c]ourt or you're not before the [c]ourt. Are you before the [c]ourt for the matter before the [c]ourt?

[APPELLANT]: Yeah. I'm here for a special appearance, just general appearance.

THE COURT: You're here before the [c]ourt so either you're participating with the [c]ourt or you're not. Are you participating?

[APPELLANT]: I'm here for a special appearance, yes.

THE COURT: The [c]ourt's going to proceed. The [c]ourt has before it a matter appropriately before [it], a custody complaint has been filed. You're the [d]efendant and so you've appeared. The [c]ourt's accepting your appearance as accepting jurisdiction of this [c]ourt over you by your appearance before the [c]ourt.

[APPELLANT]: No. I'm here on a special -- a general appearance.

THE COURT: You can call it whatever you want, sir. You're before the [c]ourt. So did you file a pretrial memo or parenting plan as ordered by this [c]ourt?

[APPELLANT]: So are you going to allow me to do my special appearance?

THE COURT: You're before the [c]ourt. You're going to answer the [c]ourt's questions. Did you file a pretrial memo and parenting plan as ordered by this Court?

[APPELLANT]: Is that a yes or no?

THE COURT: You're going to answer the [c]ourt's questions. You're not asking questions right now.

[APPELLANT]: All right. Let the record reflect that I raised timely a clear Constitutional objections [*sic*] and right now I invoke my right to remain silent.

THE COURT: What is your objection to appearing?

[APPELLANT]: You didn't allow me to do it. I asked you, I wanted to come in on a special appearance. You're not allowing me. I'm trying to be respectful here --

THE COURT: No.

[APPELLANT]: You're trying to take advantage --

THE COURT: Listen --

[APPELLANT]: -- of my rights --

THE COURT: Listen.  Stop talking …

[APPELLANT]: All right.

THE COURT: Do not speak unless called on.  ...  When you're in a courtroom, and a [j]udge gives you an order, you comply with it.  I'm going to show respect to you as long as you show respect in return, and even then the [c]ourt's going to show respect.  I'm going to conduct this hearing appropriately, but you have to understand, you're in a court of law before a [j]udge, and you will adhere to the direction of the [j]udge, whether you agree with them or not, you will follow orders of the [c]ourt.  …

[APPELLANT]: Okay.  I'm allowed to speak?

THE COURT: Uh-huh.

[APPELLANT]: My objection is I'm not here under – I'm objecting to being here under a general appearance.

THE COURT: The [c]ourt notes your objection and overrules your objection.  You're before the [c]ourt.  Now, did you file a pretrial memo or parenting plan as ordered by the [c]ourt?

[APPELLANT]: Do I have a right to remain silent?

THE COURT: This isn't a criminal proceeding.  The [c]ourt's looking for an answer to a simple question.  You were provided an order to appear today.  You have appeared today.  As part of that same order that you acted on by appearing before this [c]ourt, you were ordered to file a pretrial memo and a parenting plan.  We gave you a blank parenting plan and pretrial memo forms for you to complete.  Have you completed them and filed them with the [c]ourt as required by that order?

You're refusing to answer?

[APPELLANT]: Well, do I have the right to remain to silent?

THE COURT: [T]his isn't a criminal proceeding.  You can remain silent, but you have to understand, the [c]ourt will weigh that in determining what's before the [c]ourt, which is the best interest of [C]hildren and who's going to have custody of them.  So if you

- 4 -

don't answer a question, the [c]ourt can't force you to answer a question….

***Id.*** at 3-7.

Appellant continued to respond to the trial court's questions with silence. ***See id.*** at 9 (trial court "not[ing Appellant is] choosing not to answer."); ***id.*** at 16-17 (same); ***id.*** at 28 (same). The court advised that "based on [Appellant's] failure to address in documents to the [c]ourt what his criminal history is" and what the court had "heard so far," it would "maintain supervised visitation." ***Id.*** at 9. The court added that it would schedule the matter for trial, and modified its prior order by granting Mother sole legal custody. ***Id.*** at 25.

Trial was originally scheduled for December 2, 2025. ***See*** Order, 8/27/25. For reasons not of record, the trial court rescheduled trial for December 1, 2025. ***See*** Order, 11/13/25. The record shows that the York County Prothonotary mailed notice of the scheduling change to both parties.

Father was not present when the trial began. The trial court observed that "both parties were under order of the [c]ourt and with the proper notice to appear…." N.T., 12/1/25, at 4. The court stated, "it is now 9:33 a.m. and [Appellant] has not appeared." ***Id.*** Mother's counsel informed the court that pursuant to the order requiring the parties to provide a joint stipulation of facts, she had e-mailed a copy of proposed stipulations to Appellant on November 18, 2025, but "had not received a response from him[, and a]s

such, no stipulations were filed." *Id.* at 6.  The court stated that "in addition to what [M]other's counsel noted,"

> [Appellant] has failed to comply with prior orders of this [c]ourt in that he[,] as of today's date[,] has not filed a pre-trial memorandum as previously ordered by the [c]ourt.  He's not filed a proposed parenting plan as previously ordered by the [c]ourt.  He has not filed a certification of completion of the Kids First Custody Workshop or its equivalent online program.  Additionally, [Appellant] did not participate in conciliation with the court, and he did not participate in mediation.
>
> The [c]ourt would also note … [Appellant] was ordered per the [c]ourt's dictated order of August 22, 2025, to have a threat of harm evaluation completed.  As of today's date, the [c]ourt is unaware of whether [he] followed through in having a threat of harm evaluation completed as ordered by the [c]ourt.

*Id.* at 7-8.

At 9:41 a.m., the trial court began interviewing Children, individually, *in camera*.  The court first interviewed L.S., followed by N.S.  *Id.* at 9-49; 49-69.  Upon returning to the courtroom, the court "note[d] for the record that [Appellant] has now appeared." *Id.* at 69.  The court advised Appellant it had "waited until about 9:30 to give some additional time in case you were just running late." *Id.* at 70.  Appellant responded, "I need to state that once again, I'm here on a special appearance and not a general appearance.  All right.  My sole purpose is just to review the alleged evidence and challenge jurisdiction which was never established." *Id.* at 71.  The trial court referenced the "Affidavit of Facts, Formal Notice, Perjury, and Contempt of Court" Appellant had filed on November 25, 2025.  *Id.*  The court stated:

You are challenging the jurisdiction of the [c]ourt. The [c]ourt denies that challenge and finds th[e c]ourt does have appropriate jurisdiction….

The laws of this Commonwealth establish the process for parents when they have children together to try to reach an agreement of how they are going to co-parent their children and when the children are in their legal and/or physical custody.

The [c]ourt finds [M]other had the right to file a custody complaint with this court and did so earlier this year. And the [c]ourt finds [it] has proper jurisdiction to hear [M]other's complaint as it relates to what shared or what legal and physical custody of [C]hildren will be….

[APPELLANT]: I would like to object.

THE COURT: You made a request to the [c]ourt challenging the [c]ourt's jurisdiction. The [c]ourt is … denying your challenge and finds that the [c]ourt has proper jurisdiction to proceed….

Your second request seems to be that you're asking the [c]ourt to recuse itself from hearing this case. The [c]ourt finds there is no reason for the [c]ourt to recuse itself. The [c]ourt has heard testimony from [C]hildren and will hear further testimony today. The [c]ourt has no conflict of interest that requires a recusal…. So the request for the [c]ourt to recuse itself is denied as well.

You make a request to video record today's hearing. That is contrary to the Rules of Court regarding videotaping a proceeding of this nature…. So that request is denied.

And it appears your final request … is that all interim and current custody orders issued without lawful jurisdiction be declared void *ab initio*. The [c]ourt finds it has not issued any interim or other custody orders that are without lawful jurisdiction. So that request is likewise denied.

So the [c]ourt is going to proceed with further testimony here today. For the benefit of both [parties] and [Mother's] counsel, the [c]ourt did interview [C]hildren. [C]hildren presented themselves very well.

*Id.* at 72-74.

The trial court recounted its communications with Children, and "found [Children] to be truthful and credible in what they shared." *Id.* at 79-80. The court stated that it would "weigh their input appropriately." *Id.* at 80.

Appellant continued to object to the trial court's jurisdiction. *See id.* at 81-84. The trial court addressed Appellant:

[T]he [c]ourt acknowledged your filing, has made a ruling on what appears to be your request … and now is going to proceed. The [c]ourt's hope for you is that you'll now focus on the … matter before the [c]ourt. [The court] is going to follow the laws of this Commonwealth including considering the [statutory] factors that it is governed by in deciding what is in [Children's] best interest….

The [c]ourt has taken testimony from [C]hildren … and their input will be weighed appropriately.

The [c]ourt's hope is you will now focus on wanting to be an engaged father by presenting your case as you deem appropriate in that the [c]ourt has made rulings and is proceeding with today's custody trial.

It is in your best interest as [C]hildren's father to make your case as to why it is in [C]hildren's best interest to have contact and involvement with you.

Ultimately, it is going to be up to you whether you properly cross-examine any witness presented by [M]other [and] whether you offer any direct testimony of your own or from other witnesses. … And based on that testimony and any exhibits properly made part of the record, the [c]ourt [will decide what] is in [C]hildren's best interest. The [c]ourt welcomes your participation and hopes that you will fully participate.

*Id.* at 84-85. Appellant continued to object, and the court repeated that it would "be proceeding here today and ultimately issuing a custody order based

on the testimony presented." *Id.* at 87. The court advised Mother's counsel to proceed. *Id.*[1]

Mother testified that she and Appellant separated in January 2022 and later divorced. *Id.* at 88, 95. She described an incident that occurred on January 18, 2022. *Id.* at 95. Mother stated that she had left Children at home with Appellant, and when she returned, "everyone was acting very strange." *Id.* Mother recounted L.S. indicating that Appellant had touched her inappropriately. *Id.* at 96. Mother said that she immediately confronted Appellant, who "was packing his stuff" and "admitted he did what [L.S.] had stated. He apologized." *Id.* Mother stated that she "grabbed some things and moved" with Children to a friend's home. *Id.* Shortly after, she obtained a three-year PFA order against Appellant on behalf of herself and Children.[2] *Id.* Mother explained that she filed her custody complaint because the PFA order expired. *Id.* at 99. Mother expressed concern that Appellant "could do the same thing he did to [L.S.] previously, [and] for [Children's] safety overall." *Id.* at 100. Consequently, Mother requested that any partial physical custody with Appellant "be supervised by a professional agency." *Id.* at 123.

---

[1] During Mother's testimony, Appellant stated he would "be remaining silent under duress and that does not imply consent to anything, and I do not consent to any proceedings here. So I object to the statement that I consent to anything." *Id.* at 92. The trial court noted the objection and stated it "did not indicate that [Appellant] consented." *Id.*

[2] Mother said that she contacted "Children and Youth[, which determined her report was] unfounded because [Appellant] would never speak to them. And then I believe the case was closed with the State Police because they could never speak to him or get him to talk is what I'm understanding." *Id.* at 102.

- 9 -

Mother further testified that she and Children live in a three-bedroom home. *Id.* at 90. She stated that Children "share a bedroom," and "sleep together every night even though they have two different beds." *Id.* Mother relayed that Children do well in school, and their grades are "As [and] Bs." *Id.* at 93. When Mother's counsel moved for admission of Children's report cards, the trial court asked Appellant if he had any objection, and he refused to answer. *Id.* The court admitted the report cards "without objection being made." *Id.* at 94.[3] Mother testified that she works full-time, Monday through Friday. *Id.* She stated that Children are enrolled in an afterschool program, and she has family and friends who watch Children. *Id.* at 94, 120. Mother estimated that the driving distance from her home to Appellant's home was "an hour and a half to maybe an hour 45 minutes." *Id.* at 95.

After Mother's testimony, the trial court found, "[b]ased on [Appellant's] silence and refusal to respond," that Appellant was "forfeiting his right to present testimony on direct or call witnesses on his behalf." *Id.* at 128. The court added that it had "not been made aware of any exhibits [Appellant] wishes to offer for inclusion in today's record." *Id.* The court further advised:

> The [c]ourt will be filing a Final Order of Custody and Opinion in the next few days. Pending the filing of that Final Order of Custody and Opinion, the Interim Order dated June 25, 2025 as amended by the [c]ourt's dictated order of August 22, 2025, remains in full

---

[3] Appellant continued to answer the court's questions with silence. *See id.* at 108 (trial court stating that Appellant "is choosing not to respond"); *id.* at 110 (trial court "not[ing] for the record that [Appellant] is again refusing to respond"); *id.* at 112 (same); *id.* at 125 (same); *id.* at 127 (same).

force and effect with the following amendment and addition thereto:

Mother will continue to have sole legal custody of [C]hildren and primary physical custody of [C]hildren.

[Appellant] may exercise fully supervised partial physical custody on alternating Saturdays from 10 a.m. to 3 p.m. If [Appellant] intends to exercise an alternating Saturday which will continue on the alternating weekend schedule that [M]other and [Appellant] have been following, he must confirm to [M]other no later than 5 p.m. on the Monday immediately preceding his alternating Saturday visit. If no confirmation is received by [M]other prior to 5 p.m. on the Monday preceding the alternating Saturday visit, [Appellant's] visit is cancelled for that alternating Saturday and [M]other is free to make other plans with [C]hildren.

Additionally, in order to exercise an alternating Saturday visit from 10 a.m. to 3 p.m. or some shorter period during the hours of 10 a.m. to 3 p.m., [Appellant] must engage a professional supervisor to supervise his day visit with [C]hildren with the cost of said supervision placed on [Appellant].

As will be delineated in further detail in the [c]ourt's Final Order of Custody and Opinion, and based on the testimony the [c]ourt has heard here today and exhibits made part of the record, the [c]ourt finds that [Appellant] poses a threat of harm to [C]hildren and thus is requiring his contact with [C]hildren be fully supervised by a professional supervisor.

The court notes [Appellant] has failed to have a … threat of harm evaluation completed as ordered in the court's August 22nd, 2025, dictated order. Father has failed to file his criminal record and abuse history with the [c]ourt as previously ordered. [Appellant] has failed to file a pre-trial memorandum and parenting plan as previously ordered. [Appellant] has failed to document completion of the court ordered Kids First Custody Workshop or equivalent online program.

The [c]ourt heard no testimony from [Appellant] due to [his] decision to not participate in either cross-examination of [M]other's testimony or in presenting any testimony of his own or testimony by other witnesses on his behalf.

> A copy of this dictated order shall be transcribed and provided to [Mother's counsel] on behalf of [M]other and mailed to [Appellant] at his address of record….

*Id.* at 129-131. The trial court subsequently issued its Order and Opinion.[4]

The court observed:

> [Appellant] did not take part in the proceedings other than to address the contents of a document he filed titled "Affidavit of Facts, Formal Notice, Perjury and Contempt of Court[,]" which contained requests for the [c]ourt to find that it lacked subject matter jurisdiction, that the [c]ourt recuse itself from the case, and that [Appellant] be permitted to make a video record of the proceedings. The [c]ourt denied the requests contained in the Affidavit, and [Appellant] remained silent for the remainder of the trial, declining to testify on his own behalf, present other witnesses or evidence, cross-examine Mother, or object to any testimony or evidence presented by Mother.

Trial Court Opinion (TCO) 12/10/25, at 1-2. In support of its written order, the court made findings of fact, discussed applicable law, and analyzed the statutory custody factors set forth in 23 Pa.C.S. § 5328. *See id.* at 2-9.

Father filed a timely notice of appeal and concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court responded:

> The basis for the Order subject to appeal can be found in the Order and Opinion in support thereof…. [Appellant's] challenges to the [c]ourt's jurisdiction and request for recusal were denied at the time of trial. This [c]ourt cannot offer anything more direct or clear than the statements contained in the Order [and Opinion,] which the [c]ourt feels appropriately explains its reasoning….

Statement of Lower Court Pursuant to Pa.R.A.P. 1925(a)(2)(ii), 1/21/26.

---

[4] The Order and Opinion is dated December 5, 2025, was filed on December 10, 2025, and mailed to Appellant on December 11, 2025.

On appeal, Appellant presents the following issues:

1. Did the trial court lack lawful subject matter jurisdiction to proceed where it failed to establish its authority on the record, failed to satisfy constitutional prerequisites to the exercise of jurisdiction, and proceeded despite Appellant's timely jurisdictional objections raised verbally and by sworn affidavit?

2. Did the trial court abandon judicial neutrality and violate due process by acting as an advocate for Appellee, asserting facts not in evidence, interpreting Appellant's affidavit *sua sponte*, and responding substantively to objections in a manner inconsistent with the role of an impartial tribunal?

3. Did the trial court commit reversible error by treating unproven testimony and allegations as established fact without admitting evidence, without sworn proof, and without creating a competent evidentiary record?

4. Did the trial court violate Appellant's constitutional right to be heard by refusing to acknowledge or consider Appellant's sworn affidavit challenging jurisdiction solely because it was not filed in "motion format"?

5. Did the trial court violate due process by suppressing Appellant's attempt to appear specially, threatening contempt and arrest, and compelling participation under coercive conditions that invalidated any appearance as voluntary?

6. Did the trial court err by entering custody orders based solely on administrative recommendations from conciliation without conducting a judicial hearing, without admitting evidence, and without ensuring compliance with constitutional procedural safeguards?

7. Did the trial court violate federal and state constitutional protections by issuing the June 25, 2025 interim custody order without verified allegations of harm, without evidence, and without holding a judicial hearing, and then compounding those violations in the December 10, 2025 final custody order by relying on the same unverified allegations and extra-record material?

8. Did the trial court unconstitutionally interfere with Appellant's fundamental liberty interest in the care, custody, and control of [C]hildren—protected under the Fourteenth Amendment and

binding United States Supreme Court precedent—without any finding of unfitness or harm?

9. Did the trial court commit reversible error by issuing factual findings in its opinion that were unsupported by the evidentiary record, based solely on uncorroborated assertions, and contrary to the requirements for findings of fact?

10. Did the trial court err by issuing the final custody order absent clear and convincing evidence, without judicial cause or legal justification, and without proof of harm—contrary to both Pennsylvania law and federal constitutional requirements?

11. Did the trial court violate Appellant's constitutional right to petition and challenge jurisdiction by refusing to acknowledge, address, or rule upon Appellant's jurisdictional objections presented through sworn affidavit and oral statements?

12. Did the trial court commit reversible constitutional error by treating Appellant's invocation of his rights—including silence and special appearance—as consent to jurisdiction and to the proceedings, contrary to due process principles?

13. Did the trial court and its agents improperly threaten enforcement of custody terms without lawful jurisdiction, exposing state actors to liability under 42 U.S.C. § 1983 for actions taken under color of law without authority?

14. Did the trial court violate [C]hildren's own constitutionally protected liberty interest in their relationship with [Appellant] by restricting that relationship without any showing of harm, danger, or compelling governmental interest?

15. Did the trial court err and violate due process by denying Appellant's formal request for judicial recusal despite demonstrated bias, advocacy, and loss of impartiality without conducting an evidentiary review or providing legal justification?

16. Did the trial court violate constitutional rights and the principles of open courts by denying Appellant's request to record the public custody proceedings for the purpose of preserving the record, ensuring transparency, and avoiding financial barriers to transcript access?

Father's Brief at 11-17.

We review the trial court's custody order for an abuse of discretion. ***Wilson v. Smyers***, 284 A.3d 509, 515 (Pa. Super. 2022). This Court accepts findings of the trial court if they are supported by the evidence, "as our role does not include making independent factual determinations," and we "defer to the presiding trial judge who viewed and assessed the witnesses first-hand." ***Id.*** (citations omitted)

In custody matters, the paramount concern is the best interest of the children. ***A.L.B. v. M.D.L.***, 239 A.3d 142, 148 (Pa. Super. 2020). A court must determine the children's best interest by considering relevant statutory factors, and giving weighted consideration to specific factors that affect the safety of the children. ***See*** 23 Pa.C.S. § 5328(a). Notably,

> the discretion a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

For much of the trial court proceedings, Appellant declined to participate or speak. He is not silent on appeal. Appellant's brief is 369 pages without exhibits and attachments. He claims his brief contains 29,000 words. ***See*** Appellant's Brief at 369; ***see also*** Pa.R.A.P. 2135(a)(1) (providing an appellate brief "shall not exceed 14,000 words"). Appellant's brief is flawed in other respects. For example, he cites "R.R. ___," but has not filed a

reproduced record. ***See, e.g.***, Appellant's Brief at 7, 26, 29, 32, 143.[5]  Most

significantly, Appellant fails to present an intelligible argument.  Appellant's

brief is rambling and repetitive, and his claims are unsupported by the record

and applicable legal authority.  For instance, Appellant claims the trial court

"used fabricated 'facts' to predetermine the outcome of the custody trial." ***Id.***

at 81.  He also states:

> This appeal challenges custody orders that were entered without
> constitutionally required jurisdiction, without evidence, without
> findings of harm, and through procedures that violated Appellant's
> and [C]hildren's fundamental liberty interests.

***Id.*** at 180.   In another example, Appellant asserts the trial court

"manufactured it is own allegations to justify its restrictions." ***Id.*** at 255.

As Appellant has failed to present a proper legal argument, we find his

issues waived.   ***See Kaur v. Singh***, 259 A.3d 505, 511 (Pa. Super. 2021)

(finding waiver where appellant "fails to properly raise and develop issues in

briefs"); ***Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011) (finding

waiver where appellant "failed to develop or present a proper argument").[6]

Order affirmed.  Application to dismiss denied as moot.

---

[5] On March 2, 2025, Mother filed an application to dismiss the appeal because Father failed to file a reproduced record.  The application is denied as moot.

[6] While Appellant is *pro se*, such status "confers no special benefit." ***Commonwealth v. Lyons***, 833 A.2d 245, 252 (Pa. Super. 2003).  A person who represents himself "must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing."  ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018).

Judge McLaughlin joins this memorandum.

Judge Kunselman files a concurring statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/4/2026